1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8  DAVID ALLEN GILLUM,

9                        Plaintiff,

10         v.

11  OWENS, et al.,

12                        Defendants.

CASE NO. 2:19-cv-01859-RSM-BAT

**REPORT AND
RECOMMENDATION**

13        In this 42 U.S.C. § 1983 action, *pro se* plaintiff David Allen Gillum contends that

14  defendants unconstitutionally inflicted excessive custody by declining to follow two King

15  County Superior Court orders of temporary release and continuing to hold him for weeks on a

16  Snohomish County warrant without affording him the opportunity to be released or transferred to

17  Snohomish County. Dkt. 5, at 9–10. Defendants move for summary judgment. Dkt. 33.

18        The Court recommends **GRANTING IN-PART and DENYING IN-PART** defendants'

19  summary judgment motion. Summary judgment should be **GRANTED IN-PART** to dismiss

20  unsubstantiated claims and to dismiss defendant Sergeant Namon Merritt, Jr. (listed as "Sargent

21  [sic] Marrot") from this action given no credible suggestions of his involvement. Summary

22  judgment should be **DENIED IN-PART without prejudice** as to King County and the

23  correctional officers on the question of excessive custody because there are genuine issues of

REPORT AND RECOMMENDATION - 1

material fact about whether they properly implemented or violated a King County custom or policy by continuing to detain Mr. Gillum for weeks in contradiction to the temporary release orders despite a lack of evidence or attestation that there were reasons to delay transporting Mr. Gillum to Snohomish County to address the outstanding warrant. King County should be substituted as the proper defendant in place of Maleng Regional Justice Center ("MRJC") sued in its official capacity. *Pro se* plaintiff should be granted **leave to amend his complaint within thirty (30) days** to clarify that defendant "Sargent [sic] Owens" refers to Department of Adult & Juvenile Detention ("DAJD") Corrections Captain Dean Owens; to add, based on defendants' admissions, DAJD Sergeant Thomas Manning and DAJD Corrections Officer Jon McLellan as defendants sued in their individual capacities; and to reflect that the sole § 1983 claim is one for excessive custody. The current pretrial scheduling order should be **STRICKEN**. Dkts. 24, 32. Once plaintiff has filed his amended complaint, the Court will order service on Sergeant Manning and Officer McLellan and issue an amended pretrial scheduling order.

## BACKGROUND

On August 15, 2016, Snohomish County Superior Court Judge Bruce Weiss issued an arrest warrant for Mr. Gillum after he failed to appear in criminal Case No. 16-1-00324-3. Dkt. 34-1, at 2. On October 29, 2016, 2016, Mr. Gillum was booked into the MRJC on an open King County matter Case No. 16-1-00375-0 SEA. Dkt. 34, at 2. The jail also booked Mr. Gillum on the Snohomish County warrant and placed a copy of the warrant inside Mr. Gillum's paper booking packet. *Id.* It is undisputed that the reason Mr. Gillum failed to appear at both the King County and Snohomish County matters was because he was in custody elsewhere. Dkt. 38-2, at 6–7, 12.

1        At a hearing and in a written order on November 7, 2016, King County Superior Court

2 Judge Dean Lum temporarily released Mr. Gillum until December 9, 2016, and reinstated his

3 bond of $15,075 rather than the $20,075 to which it had been raised due to his earlier failure to

4 appear. Dkt. 38-2, at 7–8; Dkt. 38-3, at 2. Judge Lum's November 7, 2016 order released Mr.

5 Gillum to the custody of "self." Dkt. 38-3, at 2. The Snohomish County hold was neither

6 discussed during the bail hearing nor mentioned in the written order. *See* Dkt. 38-2, at 4–9; Dkt.

7 38-3, at 2. Corrections Officer Jon McLellan processed the order. Dkt. 36, at 2. Seeing that the

8 order did not address the outstanding custody hold that Mr. Gillum had from Snohomish County,

9 Officer McLellan understood that temporarily releasing Mr. Gillum on the King County booking

10 would not have the effect of releasing him from custody. *Id.* Nevertheless, Officer McLellan

11 entered a notation of "TR" (temporary release) in the computerized booking system for the dates

12 indicated by Judge Lum. *Id.* Officer McLellan did not indicate whether he contacted Snohomish

13 County officials about the ongoing custody hold. Dkt. 36, at 1–3.

14        On November 28, 2016, Mr. Gillum appeared again before Judge Lum because although

15 Judge Lum's previous order granted temporary release so that Mr. Gillum could post the bail of

16 $15,075, Mr. Gillum had not been released on the basis of the existing Snohomish County hold.

17 Dkt. 38-2, at 11. Attorney Marc Stenchever stood in for Mr. Gillum's attorney of record. *Id.* Mr.

18 Stenchever asked that Judge Lum "direct the jail to follow the original order, which is to TR him

19 on this matter so that he can try and post bail on this and any other cause number that may be

20 pending." *Id.* When the judge asked whether he had the jurisdiction to tell Snohomish County what

21 to do with its warrant, Mr. Stenchever responded, "Of course not, no. But you have the jurisdiction

22 to tell the jail that you want him to be released on our matter so that he can go up there and address

23 theirs." Dkt. 38-2, at 12. The prosecutor stated that the State had no position on the matter and

1   would defer to Judge Lum's decision. Dkt. 38-2, at 12–13. Judge Lum agreed to sign an order for

2   temporary release on the King County matter with the caveat that "I can't release him on the Sno

3   County hold." Dkt. 38-2, at 13. Judge Lum further stated:

> I think we need to just be careful with the way we word the TR. So
> what would happen in theory is we'd release him on this matter,
> then he'd be transported up to Sno County, then they could take
> care of it, and then he could – presumably if he got released on the
> Sno County matter, he could come back and just make sure that the
> bail got transferred over or posted on our matter too, right?

Dkt. 38-2, at 13. The November 28, 2016 order for temporary release stated that Mr. Gillum

would be released at 9:00 a.m. on November 29, 2016, "for the purpose of posting bail on this

matter and any other matters." Dkt. 38-3, at 3. The paragraph regarding to whose custody he

would be released was crossed out. *Id.* Mr. Gillum was ordered to return via the Out of Custody

Entrance to King County custody by December 4, 2016. *Id.* The jail once again processed the

order by entering a "TR" into the electronic booking record for the King County charge but did

not release Mr. Gillum because the Snohomish County hold remained in effect. Dkt. 36, at 2–3.

Mr. McLellan noted that Judge Lum's November 28, 2016 written order did not address the

Snohomish County hold, and neither Mr. McLellan nor defendants have stated whether they

contacted Snohomish County about the hold. *Id.*

Defendant Captain Owens recalls that Mr. Gillum approached him periodically to

complain about being wrongfully detained, learned from on-duty commitments officers that the

Snohomish County hold prevented Mr. Gillum's release, confirmed that a copy of the

Snohomish County warrant was in Mr. Gillum's booking packet, and explained to Mr. Gillum

that he was not being released on the basis of the Snohomish County hold. Dkt. 35, at 2.

Defendant Sergeant Merritt has no recollection of Mr. Gillum. Dkt. 37, at 1–2. Another sergeant,

Thomas Manning, responded to Mr. Gillum's grievances about his detention in a November 16, 2016 letter[1]:

> The fact is that while the King County Superior Court judge has statutory jurisdiction over the King County charge, they do not have any control over the Snohomish County Superior Court charge which is open and pending adjudication. This open charge in Snohomish County Superior Court, which is booked on you as a hold, prevents you from being released from our custody by law. The King County Jail has a statutory obligation under state law to hold you for the open pending case against you for Snohomish County Superior Court and it is that jurisdiction and that jurisdiction only that can release or modify that hold on you.

Dkt. 33, at 5.

On December 5, 2016, Mr. Gillum appeared with his attorney of record Seth Conant before King County Superior Court Judge Johanna Bender. Dkt. 38-2, at 18–24. Mr. Conant had spoken to jail personnel and learned that Mr. Gillum could not be temporarily released based on Judge Lum's orders due to the Snohomish County hold. Dkt. 38-2, at 19–20. Counsel therefore sought to have Mr. Gillum released on personal recognizance. Dkt. 38-2, at 21. Mr. Conant indicated that he had been communicating with defense counsel in Snohomish County who, in turn, had been in contact with the Snohomish County prosecutor, who was willing to have Mr. Gillum's transported swiftly to resolve the Snohomish County matter. *Id.* The State objected to a PR release because Mr. Gillum still needed to address the Snohomish County hold (and perhaps holds elsewhere), which meant he might still be in Snohomish County on the date of the King County omnibus hearing four days later. Dkt. 38-2, at 22. Judge Bender denied the motion for PR release because Mr. Gillum had fourteen warrants over the past seven years and other

---

[1] Defendants did not include Sergeant Manning's letter as an exhibit, instead mistakenly filing already filed hearing transcripts as Exhibit B to Andrea Williams's declaration. *See* Dkt. 34, at 2; Dkt. 34-2, at 2–24. Defendants did, however, quote Sergeant Manning's letter in their motion for summary judgment. *See* Dkt. 33, at 5.

1  outstanding holds beyond Snohomish County such that a release without a bail requirement

2  would be inappropriate. Dkt. 38-2, at 23. Judge Bender denied the motion for PR release without

3  prejudice, however, so that the question could be reexamined before a judge who already had

4  ongoing contact with Mr. Gillum on this matter. *Id.*

5       In addition to Captain Owens, Sergeant Merritt, and the MRJC, Mr. Gillum has named as

6  defendants all on-duty correctional officers in their individual capacities. Dkt. 5, at 2. He also

7  states that during his detention he was "being ass[]ulted and threatened along with other cruel

8  and unusual punishment by the RJC staff." Dkt. 5, at 9.

9                                    **DISCUSSION**

10      His *pro se* complaint liberally construed, Mr. Gillum contends primarily that defendants

11 violated his constitutional rights when, in contradiction to two orders of temporary release, they

12 continued to detain him on a Snohomish County hold and did not transport him within a

13 reasonable time to address the Snohomish County matter. Dkt. 9–10; *see Eldridge v. Block*, 832

14 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to

15 liberally construe the inartful pleading of pro se litigants. It is settled that the allegations of [a pro

16 se litigant's complaint] however inartfully pleaded are held to less stringent standards than

17 formal pleadings drafted by lawyers."). Defendants disagree; they also argue that MRJC should

18 be dismissed as an improper defendant, that the defendant officers should be afforded absolute or

19 qualified immunity, that Sergeant Merritt should be dismissed as not implicated by the

20 allegations, and that all other claims are unsubstantiated.

21      Although defendants move for summary judgment, they have failed to demonstrate that

22 there is no genuine issue of fact regarding whether Mr. Gillum was subject to excessive custody.

23 FED. R. CIV. P. 56. The Court therefore recommends **GRANTING IN-PART** and **DENYING**

REPORT AND RECOMMENDATION - 6

1   **IN-PART** defendants' summary judgment motion as set forth below. To the extent defendants'

2   summary judgment motion is denied, the denial should be without prejudice to renewing the

3   motion accompanied by sufficient supporting evidence and argumentation.

4       **1. Section 1983 Claim of Excessive Custody**

5           To proceed with a § 1983 claim, a plaintiff must plead that "(1) the defendants acting

6   under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal

7   statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). "A prisoner's petition

8   for damages for excessive custody can be a legitimate § 1983 claim." *Haygood v. Younger*, 769

9   F.2d 1350, 1359 (9th Cir. 1985). Such an action is based on an individual's Fourteenth

10  Amendment "due process right to be released within a reasonable time after the reason for his

11  detention [has] ended." *Brass v. County of Los Angeles*, 328 F.3d 1192, 1200 (9th Cir. 2003)

12  (citing *Baker v. McCollan*, 443 U.S. 137, 144–46 (1979)); *see Oviatt v. Pearce*, 954 F.2d 1470,

13  1474 (9th Cir. 1992) ("Indeed, the paradigmatic liberty interest under the due process clause is

14  freedom from incarceration."); *Lewis v. O'Grady,* 853 F.2d 1366, 1369–70 (7th Cir. 1988)

15  (stating that a § 1983 action lies for unreasonable delay between judicial discharge and actual

16  release from custody). Mr. Gillum's claim differs from a more typical excessive custody case in

17  that he does not necessarily challenge the constitutionality of King County's continued detention

18  of him on the basis of the Snohomish County hold, only that defendants were required *either* to

19  release him temporarily as specified in the King County orders *or* to transfer him so that he could

20  gain his liberty via addressing the Snohomish County charge. Nevertheless, the proper inquiry

21  remains one of due process: whether the conditions or restrictions of pretrial detention—being

22  held in King County custody rather than temporarily released or transferred to Snohomish

23  County custody—amounted to punishment or otherwise violated the Constitution. *Bell v.*

1    *Wolfish*, 441 U.S. 520, 536 (1979); *see id.* at 536 n.16 ("Due process requires that a pretrial

2    detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that

3    punishment may not be "cruel and unusual" under the Eighth Amendment.").[2]

4    ### 2.   MRJC Sued in Its Official Capacity

5    Defendants argue that the claims against MRJC should be dismissed because it is a

6    building, not a legal entity with the capacity to be sued. Dkt. 33, at 15; *see Nolan v. Snohomish*

7    *County*, 802 P.2d 792, 796 (Wash. App. 1990) ("[I]n a legal action involving a county, the

8    county itself is the only legal entity capable of suing and being sued."). Although defendants are

9    correct that King County is the proper defendant, *pro se* plaintiff sued MRJC in its official

10   capacity. Dkt. 5, at 3. Under *Monell v. Department of Social Services of the City of New York*,

11   "official-capacity suits generally represent only another way of pleading an action against an

12   entity of which an officer is an agent." 436 U.S. 658, 690 n.55 (1978). This is because in an

13   official capacity suit, the government entity is the real party in interest and the plaintiff must

14

15   [2] Mr. Gillum asserts a violation of the Eighth Amendment. Dkt. 5, at 5. "Eighth Amendment
protections apply only once a prisoner has been convicted of a crime, while pretrial detainees are

16   entitled to the potentially more expansive protections of the Due Process Clause of the
Fourteenth Amendment." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir.

17   2016); *see also Byrd v. Maricopa Cty. Bd. of Supervisors*, 845 F.3d 919, 924 n.2 (9th Cir. 2017)
("The Fourteenth Amendment, and not the Eighth Amendment, governs cruel and unusual

18   punishment claims of pretrial detainees."). Thus, Mr. Gillum may *also* analogize his due process
claim to an excessive custody claim under the Eighth Amendment. *See Haygood*, 769 F.2d at

19   1334 ("Detention beyond the termination of a sentence could constitute cruel and unusual
punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest;

20   otherwise, such detention can be held to be unconstitutional only if it violates due process.")
(citations omitted). If so, Mr. Gillum's excessive custody claim might involve an objective

21   "deliberate indifference" standard for pretrial detainees rather than the subjective "deliberate
indifference" standard regarding actual intent set forth for convicted prisoners in *Haygood*. *See,*

22   *e.g.*, *Gordon v. County of Orange*, 888 F.3d 1118, 1123–24 (9th Cir. 2018) ("In short, in *Castro*,
we declared that *Kingsley* 'expressly rejected the interpretation of *Bell* on which we had relied in

23   *Clouthier*.... [and] the notion that there exists a single "deliberate indifference" standard
applicable to all § 1983 claims, whether brought by pretrial detainees or by convicted
prisoners.'").

show that the entity's policy or custom played a part in the federal law violation. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Butler v. Elle*, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002) ("Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded."). Because plaintiff sued MRJC in its official capacity and King County received both notice and the opportunity to respond, the Court treats this suit as one against King County. King County should therefore be substituted for MRJC as the proper defendant in this matter.

Defendants also argue that Mr. Gillum cannot show the presence of an unconstitutional custom or policy that would subject King County to liability because the DAJD General Policy Manual § 5.04.007 ("Releases") provides that it is department policy "to release inmates from custody when there is appropriate supporting documentation and it has been determined that all provisions of the court orders have been completed."[3] Dkt. 33, at 16; Dkt. 34, at 2. That is, defendants assert that King County is inoculated from liability for continuing to detain, and not transferring, Mr. Gillum entirely because the DAJD policy states that detainees will not be released if there is an outstanding hold. Judgment as a matter of law cannot be granted in favor of King County on this basis because defendants have failed to address how the DAJD policy might nevertheless violate its own policies and the law, and have not resolved genuine issues of material fact.

---

[3] Defendants did not provide a copy of the DAJD's General Policy Manual, instead relying on the paraphrased language of Andrea Williams, the Records and Information Systems Manager at DAJD. Dkt. 34.

REPORT AND RECOMMENDATION - 9

First, although defendants cite the DAJD General Policy Manual, their discussion of the applicable policy provisions is cursory and they cite no legal authority for the implication that so long as a detainee has an existing hold, King County had no obligation to permit a detainee to address that hold in a timely fashion. An officer making a warrant arrest must, "if the person arrested wishes to deposit bail, take such person directly and without delay before a judge or before an officer authorized to take the recognizance and justify and approve the bail . . . ." RCW § 10.31.030. Furthermore, "Such judge or authorized officer shall hold bail for the legal authority within this state which issued such warrant if other than such arresting authority." *Id.* Here, although Mr. Gillum was brought before Judge Lum on the King County charge, it is undisputed that he was not brought before a Snohomish County judge to address the Snohomish County charge or to request his release in Snohomish County between the time he was ordered temporarily released on November 7, 2016 and when he was denied release on personal recognizance on December 5, 2016. King County, as "the jurisdiction having immediate authority over a prisoner" was responsible for any transportation expenses. RCW 70.48.230. But there is no indication that King County attempted to transport Mr. Gillum to Snohomish County regardless of which county was responsible for paying such expenses. It is undisputed that Mr. Gillum was booked into King County jail on the Snohomish County warrant. Dkt. 34, at 2. Yet defendants cite no policy provision that addresses if or when King County was obligated to allow him to address the Snohomish County charge within a reasonable time after he had been temporarily released on the King County charge.

Second, defendants' categorical declaration that the DAJD policy was sufficient to relieve King County of liability does not address genuine issues of material of fact that conceivably call that proposition in question. Defendants allege that with respect to Mr. Gillum

not "all provisions of the court orders [had] been completed" because the Snohomish County warrant remained outstanding. Dkt. 33, at 16. But the arrest warrant itself noted: "[Y]ou are commanded forthwith to apprehend the defendant and bring him or her before the [Snohomish County Superior Court] to be dealt with according to law." Dkt. 34-1, at 2. Does King County argue that it could not follow the Snohomish County order's dictate to bring him before the Snohomish County Superior Court because it was detaining him on the Snohomish County charge? The Snohomish County warrant also stated that once Mr. Gillum was arrested, the Snohomish County Prosecuting Attorney's Office should be notified. Dkt. 34-1, at 2. Defendants offer no indication that they ever contacted the Snohomish County Prosecuting Attorney's Office. Judge Lum presumed that temporarily releasing Mr. Gillum from obligations on the King County matter would mean an immediate transfer to Snohomish County. Dkt. 38-2, at 13. King County's administrative records classified Mr. Gillum as temporarily released. Dkt. 36, at 2–3. Nonetheless, King County presumed that unless Judge Lum ordered Mr. Gillum's transfer to Snohomish County, it had neither the obligation to release nor to transfer him to Snohomish County custody as directed by the Snohomish County warrant. Such conflicting legal interpretations cannot be reconciled in the absence of a fully developed record.

The Court recommends substituting King County for MRJC as the proper defendant and denying summary judgment to King County because there are genuine issues of material fact that preclude judgment as a matter of law.

### 3. Absolute or Qualified Immunity for Individual Defendants

Defendants argue that the defendant correctional officers should be afforded absolute or qualified immunity from Mr. Gillum's lawsuit. [4] The Court disagrees.

Defendants argue that the correctional officers are absolutely immune from § 1983 liability because they were executing a facially valid court order: the Snohomish County arrest warrant. Dkt. 33, at 9–10. But is that so? The Snohomish County warrant directed apprehending officers to bring Mr. Gillum to the Snohomish County Superior Court to face his charge and to notify the Snohomish County Prosecuting Attorney's Office. Dkt. 34-1, at 2. There is no evidence the correctional officers followed either directive. Moreover, defendants fail to meaningfully address whether Judge Lum's orders of temporary release obligated them to do more than simply ignore Mr. Gillum's entreaties to be either released or transported to Snohomish County to face his charge. Defendants apparently found it adequate to record that Mr. Gillum had been temporarily released without actually releasing him. Tr. 36, at 2. But they have not answered the question of why, knowing that Mr. Gillum was no longer being held on the King County matter and remained booked on the Snohomish County charge, they offered no evidence that they contacted Snohomish County within a reasonable time, let alone that they attempted to effectuate Mr. Gillum's transfer to Snohomish County custody. In the absence of any discussion even of how King County might reasonably resolve conflicting orders, policies, and laws, affording absolute immunity to the correctional officers is inappropriate.

---

[4] As discussed below, the Court recommends dismissing Sergeant Merritt from the lawsuit because there is no evidence and there are no allegations that he engaged in culpable conduct. This leaves Captain Owens as the only currently named individual defendant. The Court nonetheless refers to "correctional officers" because Mr. Gillum has referred to all on-duty correctional officers, by their own admission Sergeant Manning and Officer McLellan have engaged in plausibly culpable conduct, and Sergeant Manning and Officer McLellan should be added to the lawsuit.

REPORT AND RECOMMENDATION - 12

1    Similarly, the individual defendants have failed to submit sufficient evidence to

2    demonstrate that they are entitled to qualified immunity. An official is entitled to qualified

3    immunity from damages if his conduct "does not violate clearly established statutory or

4    constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

5    457 U.S. 800, 818 91982). Under § 1983, the qualified immunity defense is inapplicable

6    whenever an official "does an affirmative act, participates in another's affirmative acts, or *omits*

7    *to perform an act which he is legally required to do* that causes the deprivation [of an

8    individual's rights]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (emphasis added). The

9    proper question here is whether the correctional officers failed to perform a clearly established

10   duty that they were required to perform in order to protect the constitutional rights of Mr. Gillum

11   and others like him. To answer this question, the Court must decide whether it was clearly

12   established that the particular conduct of the officials was violative of the duty to protect Mr.

13   Gillum's right to be free from excessive custody.

14    The individual defendants contend that they had no clearly established duty to answer his

15   claim of excessive custody in relation to Judge Lum's temporary release orders because the

16   existing Snohomish County hold precluded releasing him or transferring him to Snohomish

17   County. Dkt. 33, at 13. According to defendants, neither of Judge Lum's orders clearly

18   established Mr. Gillum's constitutional right to be released from custody or transferred because

19   (1) the November 7, 2016 order released Mr. Gillum to the custody of "self" as opposed to the

20   custody of Snohomish County such that transferring him would have violated Judge Lum's

21   order, and (2) the November 28, 2016 order offered no directive that Mr. Gillum be transported.

22   Dkt. 33, at 13–14. Moreover, defendants note that Sergeant Owens and Sergeant Manning both

23   investigated Mr. Gillum's claims and Sergeant Manning responded in writing that the

REPORT AND RECOMMENDATION - 13

1    Snohomish County hold prevented Mr. Gillum from being released. Dkt. 33, at 14. The

2    individual defendants have not presented sufficient evidence or argumentation to demonstrate

3    that Mr. Gillum had no clearly established right to anything other than inaction in the face of the

4    King County orders of temporary release.

5            Although defendants argue that transferring Mr. Gillum to Snohomish County would

6    have contradicted Judge Lum's November 7, 2016 order of release to "self," this is not the

7    rationale that the correctional officers themselves offered for failing to transfer Mr. Gillum to

8    Snohomish County. Dkt. 33, at 13. Sergeant Manning stated that the basis for Mr. Gillum's

9    continued King County detention was the Snohomish County hold, not Judge Lum's order. Dkt.

10   33, at 5. On November 28, 2016, Judge Lum stated his understanding that a temporary release

11   from King County custody would mean Mr. Gillum's immediate transfer to Snohomish County

12   the following day. Dkt. 38-2, at 13–14. While it is clear that the correctional officers justified

13   Mr. Gillum's continued detention by citing the Snohomish County warrant, they have offered no

14   evidence that they followed the instructions on that warrant by bringing Mr. Gillum to face his

15   charge in Snohomish County Superior Court and by contacting the Snohomish County

16   Prosecuting Attorney's Office about his arrest. Dkt. 34-1, at 2. Sergeant McLellan recorded

17   administratively that Mr. Gillum had been "temporarily released" from King County custody.

18   Dkt. 36, at 2. Defendants cite no legal authority or policy that suggests that "releasing" a

19   detainee without actually releasing him or her is an acceptable resolution to possibly conflicting

20   directives. Correctional officers had booked Mr. Gillum on the Snohomish County charge, but

21   there is no indication that they permitted him the opportunity to address that charge. Correctional

22   officials cite no policy or other authority that would suggest it was proper to deny Mr. Gillum the

23   opportunity to answer the only charge for which he continued to be detained.

REPORT AND RECOMMENDATION - 14

Genuine issues of material fact preclude finding there was no clearly established right for Mr. Gillum either to be temporarily released or transferred to Snohomish County within a reasonable time period on the basis of two King County orders of temporary release that left only the Snohomish County charge as the basis for continued detention. The correctional officers therefore should not be granted summary judgment on the basis of qualified immunity.

**4.  Sergeant Merritt's Non-Participation**

Defendants contend that Sergeant Merritt should be dismissed from the case because Mr. Gillum has failed to allege or provide evidence that Sergeant Merritt was personally involved in a constitutional violation. The Court agrees.

Mr. Gillum's complaint states no way in which Sergeant Merritt was involved in culpable conduct. Sergeant Merritt has no memory of Mr. Gillum, the situation that he alleges, or of Mr. Gillum ever approaching him with these concerns. Dkt. 37, at 1–2. Nothing Mr. Gillum has presented in his complaint or in his briefing suggests otherwise. *See* Dkt. 5, at 9–10; Dkt. 5-1, at 1–17; Dkt. 46, at 1–2; Dkt. 49, at 1–3.

Sergeant Merritt should be granted summary judgment and be dismissed from this matter.

**5.  Other Claims**

In the fall of 2016, Officer McLellan worked in DAJD's intake/release unit, charged with admitting and releasing inmates. Tr. 36, at 1. He notes that on November 7, 2016, he was given a copy of Judge Lum's Order for Temporary Release, entered a notation of "TR" on the King County booking, and understood that the temporary release order would not have the effect of releasing him from King County custody. Dkt. 36, at 2. Defendants submit that Sergeant Manning wrote a letter to Mr. Gillum stating that he could not be released based on the Snohomish County hold. Dkt. 33, at 5; *see* Dkt. 34, at 2. Because Officer McLellan and Sergeant

REPORT AND RECOMMENDATION - 15

1  Manning have admitted to conduct directly related to Mr. Gillum's claim of excessive custody,

2  Mr. Gillum should be afforded the opportunity to amend his complaint to add them as defendants

3  in this matter. At this time, "all on duty correctional officers" need not be dismissed from this

4  action because Mr. Gillum could plausibly name other correctional officers in his amended

5  complaint. Claims against unnamed, unserved correctional officers will not, however, proceed

6  beyond dispositive motions absent more specific allegations.

7          Mr. Gillum makes broad statements about being mistreated after complaining about his

8  continued detention. Dkt. 5, at 9. He has failed to attach this alleged mistreatment to specific

9  people, specific conduct, or specific dates. Defendants should be granted summary judgment on

10  Mr. Gillum's generalized claims regarding unconstitutional conditions of confinement because

11  the allegations are not supported by plausible allegations of culpable conduct.

12                                          **CONCLUSION**

13          The Court recommends **GRANTING IN-PART and DENYING IN-PART** defendants'

14  summary judgment motion. Summary judgment should be **GRANTED IN-PART** to dismiss

15  unsubstantiated claims and to dismiss defendant Sergeant Namon Merritt, Jr. Summary judgment

16  should be **DENIED IN-PART without prejudice** as to King County and the correctional

17  officers on the question of excessive custody. King County should be substituted as the proper

18  defendant in place of MRJC. *Pro se* plaintiff should be granted **leave to amend his complaint**

19  **within thirty (30) days** to clarify that that defendants include Captain Dean Owens; to add

20  DAJD Sergeant Thomas Manning and DAJD Corrections Officer Jon McLellan as defendants

21  sued in their individual capacities; and to reflect that the sole § 1983 claim is one for excessive

22  custody. The current pretrial scheduling order should be **STRICKEN**. Dkts. 24, 32. Once

23  plaintiff has filed his amended complaint, the Court will order service on Sergeant Manning and

REPORT AND RECOMMENDATION - 16

1  Officer McLellan and issue an amended pretrial scheduling order. This matter should be referred

2  back to the undersigned magistrate judge for pretrial proceedings.

3        Mr. Gillum's responsive briefs suggest that once he posted bail, presumably weeks after

4  Judge Bender's December 5, 2016 order, he was immediately transported to Snohomish County.

5  Dkt. 46, at Dkt. 49, at 3. That admission implies that it could be Mr. Gillum's own inaction that

6  delayed a transfer to Snohomish County rather than defendants' inappropriate action or inaction.

7  The Court thus notes that to the extent defendants' motion is denied, the denial should be without

8  prejudice to renewal accompanied by sufficient argumentation and evidence.

9                              **OBJECTIONS AND APPEAL**

10        This Report and Recommendation is not an appealable order. Therefore a notice of

11  appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

12  assigned District Judge enters a judgment in the case.

13        Objections, however, may be filed and served upon all parties no later than **October 15,**

14  **2020.** The Clerk should note the matter for **October 16, 2020**, as ready for the District Judge's

15  consideration if no objection is filed. If objections are filed, any response is due within 14 days

16  after being served with the objections. A party filing an objection must note the matter for the

17  Court's consideration 14 days from the date the objection is filed and served. The matter will

18  then be ready for the Court's consideration on the date the response is due. Objections and

19  responses shall not exceed 12 pages. The failure to timely object may affect the right to appeal.

20        DATED this 25th day of September, 2020.

21

22

23        BRIAN A. TSUCHIDA
          Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 17